## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **PAMELA FICHTEL f/k/a PAMELA FOSTER** | **Case Number** |
| Plaintiff | |
| vs. | **CIVIL COMPLAINT** |
| **NATIONAL CREDIT ADJUSTERS, LLC** | **JURY TRIAL DEMANDED** |
| Defendant | |

### COMPLAINT AND JURY DEMAND

**COMES NOW**, Plaintiff, Pamela Fichtel f/k/a Pamela Foster, by and through her undersigned counsel, Bruce K. Warren, Esquire and Brent F. Vullings, Esquire of Warren & Vullings, LLP, complaining of Defendant, and respectfully avers as follows:

### I. INTRODUCTORY STATEMENT

1. Plaintiff, Pamela Fichtel f/k/a Pamela Foster, is an adult natural person and brings this action for actual and statutory damages and other relief against Defendant for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

### II. JURISDICTION

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1337.

3. Venue in this District is proper in that the Defendant maintains a registered office in this District.

### III.  PARTIES

4. Plaintiff, Pamela Fichtel f/k/a Pamela Foster, is an adult natural person residing at P.O. Box 448, Zellwood, FL 32798.  At all times material and relevant hereto, Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a (2).

5. Defendant, National Credit Adjusters, LLC ("Defendant"), at all times relevant hereto, is and was a limited liability corporation engaged in the business of collecting debt within the State of Florida and the State of Kansas with an office located at 327 West 4th Street, P.O. Box 3023, Hutchinson, KS 67504 and a registered address of P.O. Box 927, Princeton Junction, NJ 08550.

6. Defendant is engaged in the collection of debts from consumers using the telephone and mail.  Defendant regularly attempts to collect consumer debts alleged to be due to another.  Defendant is a "debt collector" as defined by the FDCPA, 15 U.S.C. §1692a(6).

### IV.  FACTUAL ALLEGATIONS

7. On or around September 14, 2010, the Plaintiff received a phone call from the Defendant at 8:34pm.

8. The Defendant's agent told the Plaintiff that the Defendant was calling in regards to an alleged debt owed by the Plaintiff and that the conversation would be recorded.

9. The Plaintiff was questioned by the Defendant on how the Plaintiff planned on paying the alleged debt.

10. The Plaintiff explained to the agent of the Defendant that the Plaintiff is currently unemployed and does not have the funds to pay the Defendant at this time.

11. The Defendant's agent told the Plaintiff, "Well you owe the debt and arrangements have to be made now before this goes to the judgment department."

12. The Defendant's agent then proceeded to ask the Plaintiff if the Plaintiff was receiving unemployment or disability. The Plaintiff explained to the agent that the income the Plaintiff receives goes toward essential every day bills.

13. The Defendant told the Plaintiff to ask a family member or friend to help pay the alleged debt. The Plaintiff simply responded, "No."

14. The Defendant's agent asked the Plaintiff if the Plaintiff lived with anyone and when the Plaintiff told the agent that she lived with her boyfriend, the Defendant asked if the Plaintiff's boyfriend can pay.

15. The agent of the Defendant continued to harass the Plaintiff about the bills the Plaintiff pays saying that the Defendant will evaluate them for the Plaintiff and figure out which ones could be cut in order for the Plaintiff to afford the alleged debt. The agent then suggested that the Plaintiff eliminate her internet bill which the Plaintiff explained would not be possible since the internet is essential for her boyfriend's job.

16. The Defendant again stated that they will evaluate the Plaintiff's other bills so that the Plaintiff can pay the Defendant.

17. The Defendant suggested that the Plaintiff set up post dated checks for when she gets paid. The Plaintiff explained to the Defendant that that is not possible since she does not know when she will have the necessary funds the Defendant is demanding.

18. The Plaintiff told the Defendant that if the Plaintiff must make payments, then the amount the Plaintiff could afford would be $5.00 a month.

19. The Defendant's agent told the Plaintiff that the Defendant will accept nothing less than $50.00 a month. The Plaintiff told the Defendant that it is impossible to pay that amount until the Plaintiff finds a job but the Defendant's agent just continued to repeat that the Plaintiff need to make a payment of no less than $50.00.

20. The Defendant's agent claimed that the Defendant sent a letter to the Plaintiff regarding the alleged debt in June but that the Plaintiff never responded.

21. The Plaintiff asked the Defendant to which address the letter was sent because the Plaintiff had never received any written correspondence from the Defendant.

22. The Defendant told the Plaintiff the address the letter was mailed and the Plaintiff informed the Defendant that that was her physical address and not her mailing address. The Plaintiff explained to the Defendant that there are no mailboxes in the Plaintiff's neighborhood so mail is not delivered to the physical address.

23. The Defendant's again told the Plaintiff once again that the Defendant will be filing for a judgment if the Plaintiff did not make payment arrangements.

24. The Defendant's agent transferred the Plaintiff to the "supervisor" on duty to arrange a payment plan.

25. The Plaintiff explained to the Defendant's supervisor, "Paul," the situation with her mailing address and that it is different from her physical address. The Plaintiff told the Defendant that the original creditor had the Plaintiff's correct mailing information so the Defendant should as well.

26. "Paul," after being told by the Plaintiff that she cannot afford the payments, suggested that she ask family and friends to help.

27. The Plaintiff explained, yet again, that her income goes to necessary bills and that her boyfriend takes care of the mortgage and cannot afford to pay.

28. "Paul" told the Plaintiff that if the alleged debt does not get paid, it will also affect the Plaintiff's boyfriend's credit as well as the Plaintiff's.

29. The Plaintiff explained to "Paul" that the alleged debt had nothing to do with the Plaintiff's boyfriend.

30. The Plaintiff continued on to tell "Paul" of the amount that she can pay a month but "Paul" refused telling her the minimum acceptable is $25.00 bi/weekly suggesting that the Plaintiff send the Defendant a post dated check.

31. The Plaintiff agreed to contact the Defendant on the Plaintiff's next payday and make a onetime payment of $25.00 but does not promise that she will be able to do so after that.

32. The Plaintiff does not dispute the alleged debt but is currently unable to afford a payment plan at this time and should not be harassed into doing so.

33. The Defendant knew or should have known that their actions violated the FDCPA.  Additionally, Defendant could have taken the steps necessary to bring their and their agent's actions within compliance of the FDCPA, but neglected to do so and failed to adequately review those actions to insure compliance with the law.

34. At all times pertinent hereto, Defendant was acting by and through it agents, servants and/or employees, who were acting with the scope and course of their employment and under the direct supervision and control of Defendant herein.

35.	At all times pertinent hereto, the conduct of Defendant as well as its agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for federal and state law and the rights of the Plaintiff herein.

36.	As a result of Defendant's conduct, Plaintiffs have sustained actual damages, including, but not limited to, injury to Plaintiff's reputation, invasion of privacy, damage to Plaintiff's credit, out-of-pocket expenses, physical, emotional and mental pain and anguish and pecuniary loss and she will continue to suffer same for an indefinite time in the future, all to her great detriment and loss.

### **COUNT I – FDCPA**

37.	The above paragraphs are hereby incorporated herein by reference.

38.	At all times relevant hereto, Defendant was attempting to collect an alleged debt which was incurred by Plaintiff for personal, family or household purposes and is a "debt" as defined by 15 U.S.C. § 1692a(5).

39.	The foregoing acts and omissions constitute violations of the FDCPA, including but not limited to, violations of:

| | |
|---|---|
| §§ 1692c(a)(1): | At any unusual time, unusual place, or unusual time or place known to be inconvenient to the consumer |
| §§ 1692d: | Any conduct the natural consequence of which is to harass, oppress, or abuse any person |
| §§ 1692d(2): | Profane language or other abusive language |
| §§ 1692e: | Any other false, deceptive, or misleading representation or means in connection with the debt collection |

| | | |
|---|---|---|
| | §§ 1692e(5): | Threaten to take any action that cannot legally be taken or that is not intended to be taken |
| | §§ 1692e(8): | Threatens or communicates false credit information, including the failure to communicate that a debt is disputed |
| | §§ 1692f: | Any unfair or unconscionable means to collect or attempt to collect the alleged debt |
| | §§ 1692g: | Failure to send the consumer a 30-day validation notice within five days of the initial communication |

**WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendant, National Credit Adjusters, LLC for the following:

a. Actual damages;

b. Statutory damages pursuant to 15 U.S.C. § 1692k;

c. Reasonable attorney's fees and litigation expenses, plus costs of suit; and

d. Such additional and further relief as may be appropriate or that the interests of justice require.

## V. JURY DEMAND

Plaintiff hereby demands a jury trial as to all issues herein.

**Respectfully submitted,**

**WARREN & VULLINGS, LLP**

**Date: October 11, 2010**        **BY: /s/ Bruce K. Warren**
Bruce K. Warren, Esquire


**BY: /s/ Brent F. Vullings**
Brent F. Vullings, Esquire

Warren & Vullings, LLP
1603 Rhawn Street
Philadelphia, PA  19111
215-745-9800    Fax 215-745-7880
Attorneys' for Plaintiff